## RAPER v. STATE.

No. A-11698.  Sept. 3, 1952.

(248 P. 2d 267.)

O. A. Brewer, Hugo, for plaintiff in error.

Mac. Q. Williamson, Atty. Gen., and Sam H. Lattimore, Ass't Atty. Gen., for defendant in error.

POWELL, J. Chester Vernon Raper, plaintiff in error, who will hereinafter be referred to as defendant, was charged by information filed in the county court of Choctaw county, with the crime of operating a motor vehicle while under the influence of intoxicating liquor; was tried before a jury, found guilty and his punishment fixed at a fine of $300. Appeal has been perfected to this court, where for reversal defendant advances and argues four propositions of error, that will be treated in the order presented.

In Proposition I, it is set out that the court erred in refusing to sustain the general demurrer to the information by reason of ambiguity and uncertainty of information and variance of proof.

The charging part of the information reads:

"* * * that Chester Vernon Raper, did in Choctaw County, State of Oklahoma, on or about the 15 day of March 1951, and anterior to the presentment hereof, commit the crime of operating a motor vehicle while under the influence of intoxicating liquor, in the manner and form as follows, towit: That he, the said defendant, then and there being, did then and there wilfully, wrongfully, unlawfully drive, operate and propel a certain 1950 Ford Coach automobile from a point unknown to a point on Highway No. 271. ½ mile from the west edge of the City of Hugo, Choctaw County, Oklahoma, while he, the said defendant, was under the influence of intoxicating liquor, * * *."

We feel sure that if the county attorney had given a little more study to the preparation of the information, he could have improved on it. The evidence disclosed that the car was being driven east along Highway No. 271; that the point where the officers claim defendant drove off the highway and caused them to conclude something was wrong, was about one-half mile from the west edge of Hugo. This could have been stated clearer in the information where it is said: "* * * from a point unknown to a point on Highway 271, ½ mile from the west edge of the city of Hugo * * *." But is the defect such as to justify the reversal of this case? The statutory provision involved is Tit. 47 O.S. 1951, § 93, and reads in part:

"It shall be unlawful for any person who is under the influence of intoxicating liquor * * * to operate or drive a motor vehicle on any thoroughfare, highway, county road, state highway or state road, public street, avenue, public park, driveway, public square or place, bridge, viaduct, trestle or any thoroughfare or structure, public or private, designed, intended or used by or for the general public for travel or traffic or the passage of vehicles within this State and any person violating the provisions of this Section shall be deemed guilty of a misdemeanor for the first offense and upon conviction therefor shall be punished by imprisonment in the County Jail for a period of time not more than one (1) year, or by a fine of not more than Five Hundred Dollars ($500.00) or by both such fine and imprisonment. * * *"

The effect of counsel's argument is to advocate the application to the above statute of the principles developed in the construction of the unlawful transportation of intoxicating liquor statute, Tit. 37 O.S. 1951, § 1. But these statutes are so different in language and terms that a casual reading and comparison would veto such thought.

Counsel for the defendant cites Jones v. State, 94 Okla. Cr. 15, 229 P. 2d 613, as being conclusive of the insufficiency of the information in the within case, and the Attorney General cites it as being conclusive of the sufficiency.

In the Jones case the defendant was charged with driving a described motor vehicle while under the influence of intoxicating liquor:

"From a point 135 feet South of the intersection of Choctaw and Broadway Streets in the City of Marlow, Oklahoma, at which point he was involved in a property damage accident [case]".

This court in passing on the question raised, through Jones, J., in the body of the opinion stated:

"The word highway is not mentioned anywhere in the information and there are no facts alleged by which this court could reasonably infer that the defendant was driving the automobile on a highway. Even in the caption the crime is designated 'driving an automobile while under the influence of intoxicating liquor'. * * * The information does not allege that such a point is on a street of the city of Marlow and does not allege any point to which the automobile was driven. As pointed out by counsel for defendant, there was nothing in the information to show that the spot where the car was allegedly driven was not on private property or even in the private driveway of some residence not used by the general public."

In the within case, different from in the Jones case, it was alleged that the car involved was driven "to a point on Highway 271, ½ mile from the west edge of the City of Hugo * * *." If the car was driven on the highway at the point alleged the further inquiry suggested by counsel for the defendant as to "what point" was not an essential element of the crime which required proof. Whether at the edge of the roadbed proper or in the middle is immaterial. For the vehicle to get to a point on the highway would necessitate either driving along the roadbed proper or traversing the shoulder coming in from an angle, or even crossing the highway in order to reach any point on Highway 271 at the location alleged, and would under any circumstances traverse ground open to the public.

It is our conclusion that the information, though far from a model, is sufficient to meet the tests stated in the Jones case as well as in Argo v. State, 88 Okla. Cr. 107, 200 P. 2d 449, where we stated in paragraphs one and two of the syllabus:

"The gist of the sufficiency of an indictment or information is not whether it might possibly have been made more certain, but whether it alleges every element of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet.

"An information that informs an accused of the offense with which he is charged with such particularly as to enable him to prepare for his trial, and so defines and identifies the offense that, if convicted or acquitted, he will be able to defend himself against any subsequent prosecution for the same offense, is sufficient."

It is next contended that the court erred by reason of overruling defendant's motion to suppress the evidence.

It is noted from counsel's argument in brief that he still treats the issue as if the charge involved was that of possession or transportation of intoxicating liquor. The evidence on the motion disclosed that the officers in the first instance stopped defendant by reason of his reckless manner of handling his car, in that he ran off onto the shoulder of the Highway, No. 271, and on getting back on the highway ran over the center line; the officers considered that he was under the influence of some kind of stimulus or that he was at least guilty of reckless driving and proceeded to stop defendant for questioning. It was then that they discovered the whiskey breath, the thick accent, his "staggering" walk, etc., and arrested him for operating a motor vehicle while under the influence of intoxicating liquor. The discovery of the half-full pint bottle of whiskey and the two unopened half pints and one full pint, was later and incidental to the arrest on the charge just noted. The discovery of the whiskey would have justified the filing of an additional charge of transportation of intoxicating liquor, but no such charge was filed. It must be remembered that hundreds of citizens annually for many years have met their deaths on the highways of this state due in most part to reckless driving of motor vehicles. In many instances some driver was either drunk, asleep or under the influence of some drug. The state at great expense has endeavord to perform its duty towards the public by the establishment of the State Highway Patrol. Its primary function is for the control of traffic on the highways to the end that the fatalities may be reduced to the minimum, and that such highways may be made safe for all persons lawfully using the same. This requires alert and conscientious officers, and the scrupulous study by prosecuting officials of each case prior to trial. And especially required to make the program a success is courteousness, fairness, impartiality, combined with impersonal firmness. These principles must be followed to the .end that the guilty may be punished, but at the same time that the constitutional and statutory rights of a citizen may not be violated. This program followed should instill confidence and produce support and co-operation from the public and act as a deterrent to the irresponsible. In this case the general objection raised was insufficient and the court did not err in overruling the motion to suppress.

Counsel urges by Proposition III that the court committed reversible error in overruling defendant's motion for a continuance.

The evidence on the motion to suppress and at trial discloses that at the time the highway patrol officers had defendant stop his car he had as a passenger a lady whom Officer Snapp on hearing of motion for continuance, testified gave her name as Alice Nelson. Her brother, Dallas Brewer, did not know when his sister married defendant, but stated that they were supposed to be married. The proper point of inquiry was the identification of this lady as the passenger in the car with defendant at the time of his arrest. After the within case was set for trial before a jury for October 23, 1951, defendant, on October 23, 1951, caused to be filed a motion for continuance, reading as follows:

"Comes now the defendant and moves the court to continue for a reasonable time the trial of the above styled cause now set for trial for the 23rd day of October, 1951, for the reason that said defendant is unable to safely proceed to trial of this cause at the time set on account of the absence of material evidence which the said defendant has been unable with due diligence to obtain, as more fully appears from the affidavit of said defendant hereto attached, marked 'exhibit A', and made a part hereof.

"And by the reason that said defendant is unable to attend the trial of this cause for the reason that the absent witness is the wife of the defendant, and her illness is such that it requires the presence of the defendant to help take care of her and look after her and that in the absence of the affiant to render said services, said wife of the defendant may be stricken with pneumonia and

other complications, endangering her life; that said condition is, in the consideration of this affiant, an emergency; that this application is not made for the purpose of delay, but that, if a continuance is granted for a reasonable time, defendant can be present at said trial."

An affidavit by defendant in which he reiterated the allegations in the motion and set out that the witness was his wife, and an affidavit from Dr. Virgil Jobe of 1213 N. Hudson, Oklahoma City, dated October 20, 1951, in which he stated:

"This is to certify that I have been taking care of Mrs. C. V. Raper for influenza and cold. She is still in bed and will not be able to be in court in Hugo for at least ten days or more."

On hearing of the motion, the defendant was asked and answered as follows:

"Q. You are relying on the fact that she was with you at the time; that your wife, Mrs. Raper, was with you here in Hugo at the time of the offense and you are relying on the fact that if she were present today, she would be a witness in your behalf? A. Yes, sir. Q. Do you know whether any process or subpoena was served on Mrs. Raper for her appearance here in court? A. Yes, sir."

Witness did admit that he could testify to the matters which he alleged were known by his wife.

After the evidence, the following took place:

"Mr. Songer: The State is ready to go to trial now, your honor. They keep getting these telegrams, ten days and ten days. Mr. Brewer: We merely ask that it be passed a few days, we will even bring her down in an ambulance but I do think where any defendant shows there is a probability of having a witness present within a short time, he should not be forced to go to trial when the witness can be here during the present term of court. We do not ask that it be stricken from the assignment; we do not ask that it be passed for the term; we are as sincere in wanting to go to trial in this case as the state is. We certainly want to get these issues settled. It is one of the cases in which it might be in the interest of justice generally to pass it until next week. I can't see where I have been negligent. I talked to her three weeks ago and she told me she would be here and I did not know until last Saturday, the 20th, that she would not be here on the 22nd for the trial. It is a matter of common sense and common knowledge that a witness in person has much more effect before a jury than a cold piece of paper. By the Court: I have found Mr. Songer reasonable and that is the reason I gave him time to make this investigation. Mr. Songer: I believe we ought to go ahead and try it. I am ready to go ahead and I don't believe there is any showing that things will be materially changed by next week. Mr. Brewer: If the court will pass it until I can take her deposition, if it is going to get down to that. There are certain facts that she knows in connection with this matter that occurred at the time and immediately after the time. We want to be just as fair to the county attorney and this court. I think there might be a time within the next three days when we can take her deposition; I would already have taken it, if I had thought the thing to do, to invade a sick room. I will do that if he will waive time. By the Court: Mr. Songer, do you refuse to waive time to take depositions? Mr. Songer: I feel the deposition should already be taken and I am ready to go to trial at this time. By the Court: Let it be shown that the motion for continuance is overruled and exceptions allowed."

While from the evidence adduced at trial it would appear that the jury was lenient with the defendant, by leaving off a jail sentence and merely assessing a fine, in view of what the arrest actually turned up, still the validity of such evidence depended on facts justifying the stopping of defendant by the officers in the first place. And in view of his denial of running his car off the pavement, and the contention that the absent witness was material to his defense, and in

view of the unsatisfactory state of the proof of the condition of the shoulder of the road at the point in question, and the refusal of the court to permit the jury to view this road shoulder, and the showing made for continuance, it is our conclusion that the court abused his discretion in failing to grant a continuance. A prior continuance had not been asked, and the state made no effort to deny the allegations contained in defendant's motion. As this court has said before, continuances should always be granted where from the showing made, justice requires it; this to enable the defendant to procure all legal and competent evidence necessary for the fair presentation of his defense, if he has used due diligence. And here without doubt he had used due diligence. Franks v. State, 8 Okla. Cr. 71, 126 P. 582; Noel v. State, 17 Okla. Cr. 308, 188 P. 688, 690; Morse v. State, 63 Okla. Cr. 445, 77 P. 2d 757; Compton v. State, 48 Okla. Cr. 120, 289 P. 794.

There were other matters in connection with the above that compels the conclusion that the defendant did not have that fair and impartial trial guaranteed him by the Constitution and statutes of this state.

To commence with, Officer Snapp when testifying made a damaging and incompetent answer not responsive to the question that he was asked, and though the court instructed the jury not to consider the same, it may in connection with matters to be noted, have deprived him of a fair trial. Witness was asked:

"From the time you saw this car go off the road and come back on the road in front of you, did you ever lose sight of this car? A. No. I remarked there is some Oklahoma City dude down here drunk, very words I said."

Also, the county attorney, although he opposed a continuance on account of the absence of defendant's witness-wife, questioned defendant as follows:

"Q. Do you remember your wife saying she was glad the patrol stopped you— Mr. Brewer: If he is going to quote her, we insist he bring her here to substantiate what he says she said. By the Court: I sustain your objection. Mr. Brewer: I think we should have a mistrial on the grounds that the county attorney knows he should not bring into this extraneous, prejudicial matters. By the Court: Overruled."

The record indicates that the attorney for the defendant and the county attorney came to some kind of an agreement to permit the court reporter to be absent during the argument of the case to the jury under the provision that should any remarks of counsel be objected to, such remarks should be reduced to writing and handed the court clerk for the reporter. Counsel for the defendant contends that the county attorney advised the jury: "I think the defendant is guilty", and that such statement was not qualified as being based on evidence introduced. Counsel sought to have the case-made amended to show this, and the trial court had a hearing. It seems that the court clerk lost the notes handed her, and the trial court, in view of the notes not being in evidence and the statement by the county attorney that if he made such a statement it must have been with reference to the evidence, the court did not permit the amendment, and we think the ruling correct.

By reason of what has been said, the case is reversed and remanded, and the lower court is directed to grant the defendant a new trial.

BRETT, P. J., and JONES, J., concur.