# LULA SOWERS v. STATE.

No. A-5727.    Opinion Filed April, 2, 1927.
(254 Pac. 756.)

Anglin & Stevenson, for appellant.

Edwin Dabney, Atty. Gen., for the State.

DOYLE, P. J. Lula Sowers was convicted on an information charging that on the 17th day of October, 1924, she did "unlawfully have in her possession on her premises, about 8 miles northwest of the town of Sasakwa, one distillery, fully equipped with still worm, metal tubs, etc., sufficient to make whisky." In accordance with the verdict of the jury, she was sentenced to pay a fine of $300, and be imprisoned in the county jail for 90 days, and she appeals.

In support of the contention of counsel that the judgment should be reversed, a number of errors are assigned and argued. The assignment that the verdict is not sustained by sufficient evidence and that the court erred in admitting incompetent testimony will be considered together.

Joe M. Speers testified: That he was constable of Miller township. That on the 26th day of October, 1924, together with J. W. Cross, deputy sheriff, and E. T. Johnson, justice of the peace, he visited the premises occupied by the defendant, and she was not at home. He further testified:

"We first went in the field, and up on top of the bank we found a pit dug and some mash barrels buried and some cans and jars, and we found where some whisky had been cooked and some more mash buried under the bank. We destroyed the stuff."

That there was a branch behind the house and a corn patch in the bend between the branch and the river, a trail went from there to the end of the corn rows and along the corn rows to the lot, then up by the side of the lot to the yard. That the stuff he described was found about a quarter from the home of the defendant and on her place.

He further testified against the defendant's objection

and exception that he knew the reputation the defendant's place has among the people who live in the community as being a place where intoxicating liquors are kept and sold, and that it is bad. "It is where you can buy whisky most any time; that is the information I get daily."

The state rested, and the defendant moved for a directed verdict of acquittal, on the ground that the evidence was insufficient to sustain the material allegations of the information, which was overruled. Exception allowed.

The defendant, as a witness in her own behalf, testified that her family consisted of her husband, two daughters, and a grandson, and that she lives on Mr. Heard's place, and had lived in that community for 14 years; that on the day that the search was made she was at Holdenville visiting her husband, who was working there; that she did not know anything about a still being located near her place; that the stuff found was not on her place, and she did not control the land on which it was found; that she never did make whisky, did not sell whisky, and did not drink it; that there is a trail or road from Mr. Heard's place along the rows of cotton and along Mr. Heard's corn rows; that the nearest point on this road to her house is about 100 yards; that every one coming from the north on the river comes that way, because there is only a place or two on the river that they can cross.

A. H. Heard testified that he lives on Little river and Mrs. Sowers lives on his place; that the place where the still was found was no part of the land rented to Mrs. Sowers; that his house is a half mile from Mrs. Sowers; that he is acquainted with Mrs. Sowers' reputation in that community with reference to being a law-abiding citizen and her reputation is good.

J. H. Payne testified that he was on the Heard place making cane; that the still was discovered 100 or 150

yards from the place Mrs. Sowers was working; that he knew her reputation as to being an honest, law-abiding citizen, and it was good.

W. A. Sowers, husband of the defendant, testified that he was working at Holdenville, and heard that his wife was arrested, and came home; that the place where the purported still was found was not on the land that he and his wife rented from Mr. Heard; that he would judge that it was about 200 yards distant; that he never knew of any liquor being made, sold, or kept on or around his place.

In rebuttal, Speers, constable, Cross, deputy sheriff, and Johnson, justice of the peace, each testified over the defendant's objections that they knew the reputation of this defendant in the community in which she lives as being a person who violates the prohibitory laws, and that it was bad.

This prosecution was under section 2, c. 42, Session Laws, 1924, p. 43, which declares:

"It shall be unlawful for any person [or persons] to keep, or have in his possession, or knowingly permit any other person to keep, or have in possession upon any premises under the ownership or control of such first party, any still worm or still, without that he first register the same with a proper United States officer and obtain from said officer a certificate of said registration and that he also first file said certificate of registration or a certified copy thereof with the county clerk of the county in which said worm or still is located."

Under section 6, c. 1, Sess. Laws of 1923, p. 2, any distillery found in any house or building or within any inclosure shall prima facie be deemed to have been set up by and to be the property of, the person or persons who are in actual possession and control of the house, building, or inclosure, as the case may be.

A careful examination of the evidence satisfies us that the defendant was improperly convicted. The circumstances in evidence tend to show that a distillery had been set up, but it was not found. The officers only found what is described in the information as "et cetera." The only evidence tending to prove possession by the defendant was the naked statement of the witness Speers that the stuff he found was on the defendant's place. The testimony of all the witnesses for the defense, including the owner of the land, was to the effect that the place where the still had been set up was no part of the land controlled by the defendant.

To justify or sustain a conviction under section 2 above quoted, it was only necessary for the state to prove possession as charged in the information. It was unnecessary to prove criminal intent. In a prosecution of this kind, evidence of the reputation of the place is incompetent. We must therefore hold that this incompetent evidence, erroneously admitted over the objection and exception of the defendant, was prejudicial to her substantial rights, for without this illegal testimony the jury might have refused to return a verdict of guilty.

This is sufficient to dispose of the appeal. However, it is proper for us to notice that the name of the county attorney does not appear in the body of the information, nor is the name of the county attorney subscribed thereto, as required by section 2511, C. S. 1921.

In the case of Oelke v. State, 10 Okla. Cr. 49, 133 P. 1140, we held:

"An information charging a misdemeanor, preferred and signed by a legally constituted assistant county attorney, is sufficient to sustain a conviction, where no objection is made by motion to set aside, or by demurrer thereto."

In the instant case it appears that, after the county

attorney had read the information, and made his statement of the case to the jury, the defendant at that time asked the court for permission to withdraw her plea of not guilty in order to interpose a demurrer to the information, which request was refused by the court. Thus the record shows that the objection came too late. However, if raised by proper motion, or by demurrer thereto, the same should be sustained.

For the errors indicated the judgment is reversed, a new trial granted, and the cause remanded to the trial court for further proceedings.

EDWARDS and DAVENPORT, JJ., concur.